<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                :      Chapter 11

In re:                           :

                                :      Case No. 10-37170 (CGM)

FKF 3, LLC,                  :

                                :      Adv. Pro. No. 12-09072

                Debtor.     :
------------------------------------------------------------X
Gregory Messer, as Trustee of the FKF Trust,  :

                                :

             Plaintiff,     :

                                :

          against,       :

                                :

GMR, LLC,                 :
Ariston Properties, L.L.C.,       :
One Development of Edgewater, L.L.C.,  :
One Degree, LLC,            :
333, LLC,                  :
Gary M. Ricci, and         :
Conrad Roncati,           :

                                :

          Defendants.    :
------------------------------------------------------------X

## <u>MEMORANDUM DECISION GRANTING DEFAULT JUDGMENTS</u>

<u>A P P E A R A N C E S</u>:
Gregory Messer, as Trustee of the FKF Trust
*Chapter 7 Trustee*

Klestadt & Winters, LLP
*Attorneys for Gregory Messer, Trustee*
570 Seventh Ave. 17th Floor
New York, New York 10019
      By: Fred Stevens, Esq.
        Maeghan J. McLoughlin, Esq.

Law Offices of Charles Shaw, P.C.
*Attorneys for Conrad Roncati & Ariston Properties, LLC.*
170 Washington Avenue
Dumont, NJ 07628
      By: Charles Shaw, Esq.

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Trustee's motion for an order directing entry of default judgments against seven defendants (referring to any number of them as the "Defendant(s)"). Defendants Gary M. Ricci; GMR, LLC; 333, LLC; Conrad Roncati; and Ariston Properties, L.L.C., failed to establish good cause sufficient to set aside the entries of default. Each objection is overruled for reasons stated herein, and the Trustee's motion is granted.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a), 157(a), and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.

## Background

On July 19, 2010, three creditors filed an involuntary Chapter 11 petition against FKF 3, LLC ("Debtor") in the United States Bankruptcy Court for the Southern District of New York. The Debtor consented to the order for relief, and the Court entered it on August 9, 2010. On April 18, 2011, the Court confirmed the Joint Plan of Liquidation of FKF 3, LLC, pursuant to which the FKF Trust ("Trust") was created and Gregory Messer was appointed trustee ("Trustee").

The Trustee commenced the instant adversary proceeding on July 18, 2012 by filing a complaint ("Complaint" or "Adversary Complaint"). Compl., ECF No. 1. The Complaint seeks to recover $3,193,750 from GMR, LLC ("GMR"), Gary M. Ricci ("Ricci"), and Conrad Roncati ("Roncati"), jointly and severally, for breach of contract and turnover of property of the estate. Compl. ¶ 43-64. The Complaint also seeks to recover $1,100,000 from Ariston, L.L.C.

("Ariston"), 333, LLC ("333"), One Development of Edgewater, L.L.C. ("One Development"), and One Degree, LLC ("One Degree"), jointly and severally, for certain alleged fraudulent transfers made by the Debtor to these entities.  Compl. ¶ 65-142.  At the center of both of these claims is an alleged loan made by the Debtor to GMR and its principal, Gary M. Ricci. Compl. ¶ 27-42.

The Trustee alleges that in April 2006, GMR presented the Debtor with an amended note ("Note"), promising to repay  $1,500,000, together with interest, on the Note's maturity date.[1] Compl. ¶ 27.  The Note replaced a previous promissory note ("Original Note"). Compl. ¶28.  In total, the Trustee alleges that the Debtor loaned various entities $1,100,000 in cash, with the remaining $400,000 in principal attributable to another transfer to Ricci. Compl. ¶ 29. Contemporaneous with the execution of the Note, Ricci and Roncati allegedly guaranteed the full, prompt, and unconditional repayment of the loan. Compl. ¶ 34 (citing Guaranty of Payment, Ex. B ¶2).  In addition, Ricci and Roncati pledged their membership interests in Ariston and GMR, respectively, to the Debtor as additional security for GMR's obligations under the Note. Compl. ¶ 35 (citing Pledge and Security Agreement, Ex. C).

The Trustee filed the Adversary Complaint on July 18, 2012 and served it upon all Defendants on July 24, 2012. Aff. Serv., ECF No. 3; Mot. Default J. ¶ 17, ECF No. 20.  The deadline to file an answer, or otherwise reply expired on August 22, 2012 without a response from any of the Defendants.  At the Trustee's request, the Clerk of Court entered a default against all Defendants on September 6, 2012.

On September 5, 2012, the Trustee requested that another summons be issued. Letter to Clerk of Ct., ECF No. 8.  The new summons (the "Second Summons") was issued by the Clerk's

---

[1]     The Note had a maturity date of September 30, 2007, an annual interest rate of 15%, a default interest rate of 20%, required that cash collateral be deposited with the Debtor, and granted the Debtor a valid and binding security interest in the cash collateral.  Compl. ¶ 31.

Office and GMR, Ricci, Ariston, and Roncati were re-served at different addresses on September 10, 2012. *Compare* Aff. Serv., ECF No.3 *with* Cert. Serv., ECF No. 17; *see also* Mot. Default J. ¶ 17, ECF No. 20.  The deadline to file an answer or otherwise reply to the Second Summons expired on October 9, 2012 without a response from any of these Defendants.  Thereafter, the Trustee requested that a second default be entered against GMR, Ricci, Ariston, and Roncati. Aff. Req. Default, ECF No. 19.  The Trustee states that the Clerk's Office advised that the defaults previously entered were valid. *See* Aff. Req. Default, ECF No. 19; *see also* Resp. to Obj. ¶ 37, ECF No. 35.

On November 15, 2012, the Trustee filed a Motion for Default Judgment, which was served upon all Defendants at all addresses previously utilized by the Trustee for service.   Cert. Serv., ECF No. 18.  The deadline to file a response expired on December 10, 2012 without a response from any of the Defendants.  On December 21, 2012, Ricci filed an objection on behalf of himself, GMR, and 333 ("Ricci Objection"). Ricci Obj., ECF No. 24.  On December 26, 2012, Roncati filed an objection, through counsel, on behalf of himself and Ariston ("Roncati Objection"). Roncati Obj., ECF No. 26.

On January 4, 2013, the Trustee filed a response to the objections. Resp. to Obj., ECF No. 35.  On January 18, 2012, Ricci filed a letter with the Court regarding his failure to appear at the January 8, 2013 hearing, in which he advised the Court that he was under the impression that he did not need to attend the hearing. *See* Letter from Ricci, ECF, No. 41.

<u>Discussion</u>

Rule 55(c) of the Federal Rules of Civil Procedure, applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7055, states that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); Fed. R. Bankr. P. 7055.  Two of the seven

Defendants—One Development and One Degree—have not opposed the Trustee's motion and did not appear at the hearing held January 9, 2013.  The Trustee's motion for default judgments are granted as to these two Defendants.

The Roncati Objection requests that the Clerk's entry of defaults against him and Ariston be vacated, and the Court will construe the Ricci Objection under the same standard. *See Meehan v. Snow*, 652 F.2d 275, 276 (2d Cir. 1981).  "When the defaulted defendant opposes default judgment, courts treat the opposition as a motion to vacate entry of default and examine whether good cause exists to vacate the entry." *Capitol Records v. Defries*, 2012 WL 3041583, at *5 (S.D.N.Y. July 20, 2012).

 "Good cause" is not defined by Rule 55(c).  The Second Circuit has established a three factor test to help determine whether good cause exists: (1) was the default willful; (2) will setting aside the default prejudice the adversary; and (3) was a meritorious defense presented. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  If good cause is not shown, a motion for default judgment may be granted. *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (affirming district court's refusal to vacate default judgment where good cause factors were not met).

Despite the "strong preference for resolving disputes on the merits," the Defendants in this case have not satisfied their burden of establishing good case sufficient to vacate the entry of default. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011); *Enron*, 10 F.3d at 95-96.

## I.    <u>Whether the Default was Willful</u>

The first "good cause" factor is whether Defendants willfully defaulted. *Enron Oil Corp. v. Diakuhara*, 10 F.3d at 96.  To be charged with willful default, service must have been proper,

meaning that it must have satisfied the procedural rules governing service and due process.

A*ckermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986) ("Service of process must satisfy both

the statute under which service is effectuated and constitutional due process."); *Ms. Interpret v.*

*Rawe Druck—und Veredlungs—GmbH (In re Ms. Interpret)*, 222 B.R. 409, 415 (Bankr.

S.D.N.Y. 1998) ("Due process requires notice which will warn parties about the action and allow

them to present their positions.").

Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), service upon an individual or

corporation within the United States can be made by first class mail; personal service is not

required. Fed. R. Bankr. P. 7004(b) (stating that mail service is in addition to those methods

authorized by Fed. R. Civ. P. 4(e)-(j)).  If service is mailed to an individual, it must be sent to

that individual's house, usual place of abode, or to the place where the individual regularly

conducts a business or profession. Fed. R. Bankr. P. 7004(b)(1).  For corporations, partnerships,

and unincorporated associations, mail service must be made to the attention of an officer,

managing or general agent, or to any other agent authorized to receive service of process. *Id.*

7004(b)(3); *see also Moglia v. Lowitz & Sons (In re Outboard Marine Corp.)*, 359 B.R. 893, 899

(Bankr. N.D. Ill. 2007) (stating that the mailing must be sent to the attention of, but need not

specifically name, the officer, managing or general agent).  Although Rule 7004(b)(3) does not

specify where mail service for a corporation defendant must be sent, the requirement that service

be made to the attention of an officer, managing or general agent implies that service must be

directed to an address where this individual would receive it. *See Harman Auto. v. Barrincorp*

*Indust., Inc. (In re Harvard Industries, Inc.)*, 173 B.R. 82, 88 (Bankr. D. Del. 1994) (finding that

the officer of a corporate defendant was duly served with a complaint, even when the officer was

not served at the office of the defendant).

Constitutional due process requires that defendants be afforded notice "reasonably

calculated, under all circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &

Trust Co.*, 339 U.S. 306, 314 (1950).  Under *Mullane*, actual notice is not required; instead, the

question is whether the party giving notice acted reasonably in selecting means likely to inform

the party entitled to notice. *See Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988);

*see also Tulsa Prof'l Collection Servs., Inc v. Pope*, 485 U.S. 478, 490 (1982) (explaining that

"mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide

actual notice").

When service of process is mailed under Rule 7004(b), "[c]ourts uniformly presume that

an addressee receives a properly mailed item when the sender presents proof that it properly

addressed, stamped, and deposited the item in the mail." *In re Dana Corp*., 2007 WL 1577763, at

*4 (Bankr. S.D.N.Y. May 30, 2007) (noting that the presumption is very strong); *see also

Hagner v. United States*, 285 U.S. 427, 430 (1932) ("[T]he rule is well settled that proof that a

letter properly directed was placed in a post office creates a presumption that it reached its

destination in usual time and was actually received by the person to whom it was addressed."); *In

re Freedom Commc'n Holdings*, 472 B.R. 257, 262 (Bankr. D. Del. 2012) (noting that "mailing a

notice to a party's last-known address is reasonably calculated to provide actual notice").  A

party who wishes to rebut the presumption of proper service of process by mail can do so by

introducing evidence that supports a finding that the mailing was not received.  *Ms. Interpret v.

Rawe Druck—und Veredlungs—GmbH (In re Ms. Interpret)*, 222 B.R. 409, 413 (Bankr.

S.D.N.Y. 1998).  The presumption of non-receipt must be rebutted only with specific, objective

facts; an affidavit indicating non-receipt is insufficient.  *Id.* at 413 (requiring that a party "do

more than merely assert that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption").

Here, evidence proffered by the Trustee creates the presumption that proper mail service was received by all Defendants. *See* Aff. Serv., ECF No. 3; Cert. Serv., ECF No. 17; Cert. Serv., ECF No. 22. In response, the objections filed by Defendants Ricci and Roncati fail to rebut this presumption as their conclusory denials of receipt do not state the specific, objective facts necessary to indicate that service was not received.

### A.    Service of Process on Ricci, GMR, and 333

In his objection, Ricci argues that service was ineffective as he, GMR, and 333, were not personally served. Ricci Obj. at 1, ECF No. 24. As detailed above, Federal Rule of Bankruptcy Procedure 7004(b) expressly authorizes service by first class mail upon individuals and corporations, and thus Ricci's threshold argument is without merit. *See In re Quigley Co., Inc.*, 437 B.R. 102, 129 (Bankr. S.D.N.Y. 2010); Fed. R. Bankr. P. 7004(b)(1), (3). Furthermore, Ricci admits that he, GMR, and 333 "found out about the matter in October 2012 upon receiving mail forwarded from an old address listed in the complaint." *See* Ricci Obj. at 1, ECF No. 24; *see also Harris v. Pettibone Corp.*, 142 B.R. 763, 766 (M.D. La. 1992) (treating statements made by defendants that they received service as judicial admissions that service was made). The Second Summons was mailed to Ricci at the same address that is listed at the top of the Ricci Objection. *Compare* Cert. Serv., ECF No. 16 (noting that the Second Summons was mailed to P.O. Box 43, Haworth, NJ 07641), *with* Ricci Objection, ECF No. 24 (using letterhead with an address of P.O. Box 43, Haworth, NJ 07641), *and* Letter from Ricci, ECF No. 41 (same). Ricci failed to come forth with any evidence that the addresses used by the Trustee were not valid and failed to provide any evidence indicating that he, GMR, and 333 were not served. Based on this evidence,

the Court finds that service was reasonably calculated to put Ricci, GMR and 333 on notice of

the pendency of the action against them, and the presumption of receipt was not rebutted. *See*

Aff. Serv., ECF No. 3; Cert. Serv., ECF No. 17; Cert. Serv., ECF No. 22.

### B.      GMR and 333 Cannot Appear Without Counsel

Having determined that GMR and 333 were properly served, the Court notes that limited

liability companies can only appear in federal court through a licensed attorney.  *Lattanzio v.*

*COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (discussing how this rule applies to partnerships,

corporations, and limited liability companies, including solely-owned limited liability

companies).  Because GMR and 333 failed to appear in this lawsuit through counsel, the

objection filed by Ricci on behalf of GMR and 333 is ineffective.  The Court grants the Trustee's

motion as to these Defendants. *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d

Cir. 2006) (noting that a default judgment may be entered against a corporation that fails to

appear through counsel); *see also SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir.

1975) ("It is settled law that a corporation may not appear in a lawsuit against it except through

an attorney, . . . and that, where a corporation repeatedly fails to appear by counsel, a default

judgment may be entered against it.").

### C.      Service of Process on Roncati and Ariston

Roncati argues that "while [the Trustee] asserts service by regular mail on [Roncati and

Ariston's] current addresses, through mistake or inadvertence, Defendants did not receive the

pleadings . . . . [] Defendants became aware of the instant matter in November 2012 through

happenstance when co-Defendant Gary Ricci showed Roncati a pleading for the instant

matter . . . ." Roncati Obj. at 4, ECF No. 26.  As the above case law makes clear, allegations of

mistake or inadvertence, without more, cannot rebut the presumption of receipt.  *In re Dana*

*Corp.*, 2007 WL 1577763, at *4 (Bankr. S.D.N.Y. May 30, 2007); *Ms. Interpret*, 222 B.R. at

413.

On September 10, 2012, the Second Summons was mailed to Roncati's business and

home addresses.[2]  Cert. Serv., ECF No. 19.  With respect to the business address, Roncati argues

that "the property houses several other businesses and it is not uncommon for an article of mail

to be accidentally delivered to or picked up by another tenant in the building." Roncati

Certification ¶ 6, ECF No. 26.  With respect to the personal address, Roncati states that "[i]f

these pleadings were indeed sent to this address, assuming they arrived, the documents may have

been misplaced by the person whom I have hired to perform household duties, which includes

collecting the mail." Roncati Cert. ¶ 7, ECF No. 26.  Absent from the Roncati Objection is an

allegation that the address used for Ariston—2200 Fletcher Ave., Fort Lee, NJ—was incorrect.

*See* Roncati Obj., ECF No. 26.

Roncati has failed to rebut the presumption that proper service has been effectuated. *See*

Aff. Serv., ECF No. 3; Cert. Serv., ECF No. 17; Cert. Serv., ECF No. 22; *see also Ms. Interpret*,

222 B.R. at 413 (stating that more than an affidavit is required to overcome the presumption of

receipt).  In particular, nowhere does Roncati set forth specific, objective facts to substantiate his

allegations that another tenant received his mail and never returned it, or that his household staff

improperly handled his mail. *See Dana Corp.*, 2007 WL 1577763, at *4 ("Evidence of an

objective nature going beyond the claimant's statement of non-receipt is necessary.").  Rather, he

merely speculates that these events may have occurred.  As such, the Court finds that service was

reasonably calculated to put Roncati and Ariston on notice of the pendency of the action against

them, and the presumption of receipt was not rebutted.

---

[2] Roncati confirms that the business address for Architectura, Inc. is 935 River Road, Edgewater, NJ, and that his personal residence is located at 430 Homans Avenue, Closter, NJ.  These are the exact addresses listed in the Certificate of Service.

D. **Willful Default**

Willfulness has been found where a party makes a strategic decision to default. *American Alliance Ins. Co. Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996) (confirming that the standard does not include careless or negligent errors). A willful default will also be found when the "claimant made a conscious decision to allow a hearing to go forward without a response." *In re FairPoint Commc'n*, 462 B.R. 75, 80 (Bankr. S.D.N.Y. 2012); *see also SEC v. McNulty*, 137 F.3d at 738-39 (noting that attorney failure, noncompliance with scheduling orders, purposeful avoidance of service, and failed appearances or unaccountable delays are all examples of willful default) (internal citations omitted). For a default to be willful, there must be a finding of deliberate conduct as opposed to mere negligence. *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). A deliberate decision not to respond supports a finding of willfulness. *Id.*; *see also In re Staffieri*, 2012 WL 1945697, at *2 (Bankr. E.D.N.Y. May 30, 2012) (noting that a key consideration is "whether the claimant made a conscious decision to allow a hearing to go forward without a response") (internal citation omitted).

In this case, the Defendants' failure to file a responsive pleading, in light of reasonably calculated service, amounts to a willful default. *Saleh v. Francisco*, 2011 WL 5513375, *4 (S.D.N.Y. Nov. 10, 2011) ("Defendants' failure to file a response to a properly served pleading amounts to a willful default unless convincingly explained."). The Second Summons was mailed on September 10, 2012; neither party appeared until after the Trustee made his motion for an entry of a default judgment—and even these responses were untimely. In his opposition, Ricci admits to receiving a copy of the complaint as early as October 2012. Ricci Obj. at 1. Likewise, Roncanti and Ariston admit to "becom[ing] aware" of the action in November 2012. By this time, defaults had been entered against the Defendants. None of these Defendants made motions

to vacate the default or otherwise attempted to rectify their defaults once they became aware of the action.

Moreover, no Defendant entered a timely response to the Trustee's motion for default despite having been served with the motion and having been aware of the action. The Trustee's motion for default judgment was filed on November 15, 2012 and objections were due December 10, 2012. The Trustee noticed the motion with a presentment date of December 17, 2012. All three Defendants have admitted to being aware of this action prior to the response deadline. Despite having more than enough time to enter a timely response, each chose not to respond to the motion or otherwise appear in the case until after the objection deadline and the presentment date had run. *See* McLoughlin Aff., ECF No. 35, Ex.1 (stating that the Trustee and Roncanti's lawyer had been in touch several times in November, including to discuss an extension of time to file opposition to the motion for default judgment but Roncanti delayed in retaining his lawyer and was not timely in responding to his lawyers calls); *see also* Ricci Obj. (dated December 19, 2012 and filed December 21, 2012); Roncati Obj. (filed on December 26, 2012).

Ricci, Roncati, and Ariston have failed to prove that their defaults were anything other than willful. Instead, they rely on cursory denials of receipt in support of their positions. As detailed above, a denial of receipt, even for mistake or inadvertence, is not sufficient to rebut the presumption of receipt. *Ms. Interpret*, 222 B.R. at 413; *see also CUNA Mutual Ins. Grp. v. Williams (In re Williams)*, 185 B.R. 598, 600 (B.A.P. 9th Cir. 1995) ("[A] statement of non-receipt is not a nullity, but does address the presumption, which then is weighed against the declaration of non-receipt together with any other evidence submitted.").

Moreover, Ricci admits that he was aware of the motion and hearing yet he failed to appear at the January 8, 2013 hearing to argue his objection. Letter from Ricci to Court (Jan. 15,

2013), ECF No. 41.  While Ricci did file a letter with the Court on January 15, 2013 indicating that he was "under the impression" that he did not need to appear after speaking with Ms. McLoughlin of Klestadt & Winters, LLP, his statement is unconvincing in light of the evidence presented at the January 8, 2013 hearing.  *See id.* (acknowledging that he was aware of the hearing and referring to his absence as a "misunderstanding").  At the January 8, 2013 hearing, the Court heard testimony from Ms. McLoughlin.  When questioned by the Court, Ms. McLoughlin testified that she personally and repeatedly informed Ricci of his need to appear at the hearing.  Ricci was also on notice of his need to appear at the hearing as the Court set a Notice of Hearing in response to his late filed opposition.  *See* Notice of Hearing, ECF No. 32. Ricci could have easily confirmed same by reading the agenda for the January 8, 2013 hearing or by calling the Court.  *See* First Amended Notice of Agenda for January 8, 2013 hearing, ECF No. 36 (stating that "[t]his matter is going forward").

Based on the foregoing, the Court finds that Defendants willfully defaulted.  *See New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (affirming the finding that default was willful where defendants did not provide any justification for their failure to take action after receiving notice that a default had been entered against them).  His request for a new hearing date is denied.

## II.    <u>Prejudice to the Trustee</u>

Prejudice against a non-defaulting party lies where delay thwarts his or her opportunity for remedy or chance of recovery, and provides greater opportunity for fraud and collusion. *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005). Delay alone is not a sufficient basis for establishing prejudice, and the moving party has the burden of showing the absence of prejudice. *Capitol Records v. Defries*, 2012 WL 3041583, at *6 (S.D.N.Y. July 20, 2012).

Ricci does not contest the fact that the Trustee will be prejudiced by vacating the default. *See* Ricci Obj., ECF No. 24.  Roncati, on the other hand, admits that the Trustee suffered a multiple month delay in the litigation, yet shifts the focus by indicating that greater prejudice lies with Roncati and Ariston if the default against them is upheld.  Roncacti Obj., ECF No. 26.  The Trustee counters by arguing that interest continues to accrue, and that delay prejudices his chance of recovery. Resp. to Obj. ¶ 66, ECF No. 35.

Here, the facts do not indicate mere delay.  Instead, the Trustee has "articulated prejudicial consequence[s]" that will result from the Defendant's measures to frustrate recovery in this case. *See In re Emmerling*, 223 B.R. 860, 869 (B.A.P. 2d Cir. 1997) (noting that without any articulated prejudicial consequence, mere delay is not sufficient to constitute prejudice).  The Court finds a discussion of prejudice from *Saleh v. Francesco* instructive on this point. 2011 WL 5513375, *3 (S.D.N.Y. Nov. 10, 2011).  In *Saleh*, the district court noted that the defendants personally guaranteed a $596,000 loan that was accruing interest at 20% per annum. *Id.* at *5. As the delay in prosecution increased the total recovery sought, the risk that plaintiff's recovery would be hindered was sufficient prejudice in the court's view. *Id.*

Here, like in *Saleh*, the Trustee alleges that the Defendants owe $1.5 million, plus interest, accruing at 20% per annum, and that the delay due to the Defendants failure to respond increases the risk that he will not be able to recover. Resp. to Obj. ¶ 66, ECF No. 35.  The Court finds that the Trustee's increased risk of recovery is sufficient prejudice to the Trustee.

## III.    <u>Meritorious Defense</u>

 The third factor in the "good cause" analysis is whether the defaulting party presents a meritorious defense.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Although a meritorious defense need not be ultimately persuasive, the party seeking to vacate a default must

provide sufficient law and fact to give the fact finder some determination to make. *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). "[T]he defendant must present evidence beyond conclusory denials . . . and such evidence, if proven at trial, [should] constitute a complete defense." *In re JWP Info. Serv., Inc.*, 231 B.R. 209, 213 (Bankr. S.D.N.Y. 1999); *see also Enron*, 10 F.3d at 98 ("A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense.").

Ricci, Roncati, and Ariston allege that their liability is limited by citing to the same two documents: (i) Assignment and Assumption Agreement, Consent and Release ("Consent and Release"), and (ii) Assignment of Membership Interest. Ricci Obj., ECF No. 24; Roncati Obj., Ex. A, ECF No. 26.

### A.    Ricci Does Not Have A Meritorious Defense

In support of his argument that he has a meritorious defense, Ricci focuses on two provisions of the Consent and Release:[3] Recital D and Paragraph 1. Recital D is an overview of the transaction entered into by the parties, while Paragraph 1 states that the "Transferee [Ariston] hereby assumes all payment and performance obligations and liability of the Transferor under the Note."   Neither provision overrides the preservation of liability as detailed in Paragraph 5 of the Consent or the Release ("Paragraph 5").   Paragraph 5 states:

> 5. Release of Transferor Ricci and Roncati. [stet]  In reliance on the Transferor's and the Transferee's representations and warranties in this Agreement, Lender releases Transferor from his obligations under the Note and the Security Instrument, provided, however, that the Transferor is not released from any liability that relates to the period prior to the date hereof, regardless of when such matter is discovered.  In reliance on Ricci's representations and warranties in this Agreement, Lender releases Ricci and Roncati from their obligations under the Guaranty, provided, however, that Ricci is not released from any liability that

---

[3] A copy of the "Assignment and Assumption Agreement Consent and Release" can be found on pages 8-14 of the Ricci Objection, ECF 24 and at pages 7-13 of Exhibit A to the Roncanti Objection, ECF No. 26.

relates to the period prior to the date hereof, regardless of when such matter is discovered.[4]

Paragraph 5 appears to release Ricci from his obligations under the Guaranty, but the words following the release counter any allegation that Ricci is absolved of all liability. The relevant proviso states that "Ricci is not released from any liability that relates to the period prior to the date hereof, regardless of when such matter is discovered." This statement indicates that Ricci was not released from any liability arising before the date of the assignment, and thus Ricci is still liable for the principal balance of the loan because the principal balance is a liability that relates to the period prior to the date of the assignment. It is also reasonable to believe that the last portion of the sentence—"regardless of when such matter is discovered" —is broad enough to encapsulate any accrued interest to date.

Aside from pointing out the language of Recital D and Paragraph 1, both of which are contradicted by Paragraph 5, Ricci has failed to provide any additional evidence sufficient to support a defense or position, as is his burden under this prong of the "good cause" analysis. *In re Fairpoint*, 462 B.R. at 81-82. His response amounts to nothing more than conclusory denials, which are insufficient to establish a meritorious defense. *In re JWP Info. Serv., Inc.*, 231 B.R. 209, 213 (Bankr. S.D.N.Y. 1999).

### B.    Roncati and Ariston Do Not Have A Meritorious Defenses

Paragraph 9 of the Consent and Release dated August 11, 2006 applies specifically to Roncati, and counters any assertion that he is free of liability. It states:

> 9. Ratification and Reaffirmation. Roncati hereby ratifies and reaffirms his absolute and unconditional obligations under the Loan, the Security Instrument and the other documents executed by Roncati in connection with the Loan, and represents and warrants to FKF that the Security Instrument and other loan documents are in full force and that he has no know right of set-off, defense

---

[4] For purposes of this paragraph, the "Transferor" is GMR, the "Transferee" is Ariston, and the "Lender" is FKF 3, LLC

or counterclaim with respect to his obligations under the Loan, the Security
Instrument and such other loan documents as of the date of this Agreement.

This paragraph affirmatively evidences Roncati's obligation with respect to the $1,500,000 loan,

an obligation that includes full payment of principal and all contractual interest to date.

Although Paragraph 5 includes language relating to Roncati's release under the guaranty, there

has been no evidence presented which indicates that Roncati was released of his obligations

under the loan or security agreement.  In fact, further evidence of Roncati's obligation to repay

the loan is found in Paragraph 6 of the Consent and Release, which states in part "Roncati agrees

that his obligations under the Note shall in no way be affected by the release by lender of Ricci

from his obligations under the Loan . . . ." Roncati Obj. (Consent and Release, Ex. A), ECF No.

26.

 With respect to Ariston, any argument that the Consent and Release or Assignment of

Membership Interest releases it from liability is untenable.  In fact, nothing evidences Ariston's

obligation more clearly than Paragraph 1 of the Consent and Release (titled "Assumption of

Obligations"), which states that "[t]he Transferee [Ariston] hereby assumes all of the payment

and performance obligations and liability of the Transferor under the Note, as expressly provided

in the Note."  A full review of all documents filed in connection with Ariston's objection

uncovers nothing which limits Ariston's liability or contradicts Paragraph 1.

 Returning to the standard for a meritorious defense, the Court finds that Roncati and

Ariston fail to put forth sufficient law or fact to support a defense as to liability under the Note.

Liability under the Note is the basis of the breach of contract and fraudulent conveyance claims

at the center of the Trustee's Adversary Complaint, and a legally supported defense or position

has not been put forth by either Roncati or Ariston. *See In re JWP Info. Serv., Inc.*, 231 B.R. 209,

213 (Bankr. S.D.N.Y. 1999).

## Conclusion

For the foregoing reasons, the Trustee's motion for default judgment is granted.    The

Trustee should submit an order consistent with this decision.

Dated: Poughkeepsie, New York
     March 13, 2013            /s/ Cecelia G. Morris
                                 CECELIA G. MORRIS
                                 CHIEF UNITED STATES BANKRUPTCY JUDGE